# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Ingabritt LILLBASK, | : | |
| as Legal Guardian on Behalf of | : | |
| Lindsey MAUCLAIRE, | : | |
| Plaintiff, | : | |
| | : | |
| -vs- | : | Civ. No. 3:97cv1202 (PCD) |
| | : | |
| STATE OF CONNECTICUT | : | |
| DEPARTMENT OF EDUCATION, | : | |
| et al. | : | |
| Defendants. | : | |

## RULING ON PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS

Plaintiff, Inga Britt Lillbask, as legal guardian on behalf of Lindsey Mauclaire, moves [Doc. No. 373] to recover attorney's fees and costs as the prevailing party in an action filed pursuant to the Individuals with Disabilities Education Act ("IDEA"). For the reasons that follow, Plaintiff's motion is **granted in part**.

## I.    Background

Plaintiff is the guardian of Lindsey Mauclaire, a handicapped child who receives special education under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, et. seq. During the 1996 school year, Lindsey attented a pre-kindergarten program at Redding Elementary School. On August 5, 1997, a Planning and Placement team ("PPT") meeting convened to plan for the 1997-98 school year. The Redding Board of Education decided to place Lindsey at the St. Vincent's Special Needs Center ("SNC") in Trumbull, Connecticut. Pursuant to the IDEA, Plaintiff appealed this placement and other aspects of his Individualized Education Plan ("IEP") in Connecticut Department of Education due process hearings. Lindsey's placement in the Redding Elementary School was maintained under the stay-put provisions of the

IDEA or, alternatively, the Local Educational Agency ("LEA") elected not to implement it.
Linsdey was therefore never placed in the SNC.

Plaintiff appealed the LEA's decision to a hearing officer, who dismissed her appeal and
affirmed the LEA's proposed placement at the Special Needs Center.  Plaintiff then appealed to
this Court in an attempt to maintain Lindsey's current placement in Redding Elementary School
and to prevent the Special Needs Center placement as proposed by the LEA.  This Court issued
two decisions resolving cross-motions for summary judgment.  In both rulings, the Court entered
summary judgment for Defendants, except that the Court granted Plaintiff summary judgment on
her claims that due process hearings decisions were not timely issued.  As a result of these two
decisions, the only claim that remained for trial was Plaintiff's retaliation claim against the
Redding Defendants.  Following a bench trial and a memorandum of decision in which the Court
concluded that Plaintiff had failed to carry her burden on the claim of retaliation in violation of
section 504 of the Rehabilitation Act, 29 U.S.C. § 794, this Court entered final judgment in
Defendants' favor on February 13, 2003.

On February 2, 2005, the United States Court of Appeals for the Second Circuit affirmed
in part, reversed in part, vacated and remanded in part.  More specifically, the court concluded
that Plaintiff's federal challenges to the never-implemented 1997-98 proposal and the review
limitations imposed by now-repealed section 10-76h(a)(1) of the Connecticut General Statutes no
longer presented live controversies.  Accordingly, the court vacated this Court's ruling in favor of
Defendants and remanded it to dismiss Plaintiff's claims as moot.

The court further concluded that Plaintiff's challenge to the third hearing officer's refusal
to re-hear claims already decided by the first hearing officer was without merit, and therefore

affirmed this Court's judgment in Defendants' favor on this issue.

Finally, the court concluded that the broad language of 20 U.S.C. § 1415(b)(6) accords administrative hearing officers jurisdiction to review safety challenges to IEPs where such challenges relate to a disabled child's educational placement or the provision of a free appropriate public education plan. To the extent that this Court ruled otherwise, the court reversed solely that part of the judgment and remanded the case with instructions that this Court enter a declaratory judgment in favor of Plaintiff providing that a hearing officer possesses jurisdiction to consider Plaintiff's safety concerns in connection with a proposed IEP.

## II.    Standard

The IDEA provides that attorney's fees may be awarded to prevailing parties if the fees are "based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C) (2005). The Supreme Court has explained that for a plaintiff to successfully claim prevailing party status, he must demonstrate that: (1) he obtained relief on a significant claim in the litigation; (2) such relief effected a material alteration in his legal relationship with the defendant; and (3) the alteration is not merely technical or de minimis in nature. Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 791-93, 103 L. Ed. 2d 866, 109 S. Ct. 1486 (1989). "Thus, at a minimum, to be considered a prevailing party within the meaning of § 1988, the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." Id. at 792. A "prevailing party" has succeeded "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Farrar v. Hobby, 506 U.S. 103, 109, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992).

In <u>Buckhannon Board and Care Home, Inc. v. West Virginia Dep't of Health and Human Resources</u>, 532 U.S. 598, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001), the United States Supreme Court explained that to be a prevailing party, one must either secure a judgment on the merits or be a party to a settlement agreement that is expressly enforced by the court through a consent decree. <u>Id.</u> at 1840.  Although Buckhannon specifically addressed the fee-shifting provisions of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12205, and the Fair Housing Amendments Act of 1988 ("FHAA"), 42 U.S.C. § 3613(c)(2), the Second Circuit has concluded that "it is clear that Congress intended 'prevailing party' under the IDEA to have the same meaning as 'prevailing party' under § 1988."  See <u>J.C. v. Reg'l Sch. Dist. 10</u>, 278 F.3d 119, 123-24 (2d Cir. 2002).

## III.   Discussion

### A.   Prevailing Party

Plaintiff moves for attorney's fees and costs on the grounds that she is a prevailing party as a result of this Court's grant of summary judgment on her claims of untimely due process hearings decisions and the Second Circuit's reversal of this Court's affirmation of the Second Hearing Officer's conclusion that "a special education hearing officer lacks the jurisdiction to investigate safety complaints."  These claims are addressed in turn.

### i.   The Second Circuit's Decision

Plaintiff argues that the Second Circuit's ruling and subsequent declaratory judgment materially altered the legal relationship between the parties and, thus, renders her a prevailing party.  In support of this proposition, Plaintiff indicates that she filed a request for due process/mediation with the State Department of Education on October 27, 2003, and that the

rulings of both this Court and the Second Circuit have altered the time and manner in which Defendants must address and process her request.  Both the State Defendants[1] and the Redding Defendants[2] counter that the Second Circuit's decision, which reversed this Court's decision regarding jurisdiction to consider safety measures and directed this Court to enter a declaratory ruling in Plaintiff's favor, is insufficient to render Plaintiff a "prevailing party" for purposes of recovering attorneys fees.  In support of this proposition, they point to the following language from the Second Circuit's decision.

> In so doing, we recognize that because the 1997-1998 [Individualized Education Plan] was never implemented, it would serve no purpose for the district court to remand this matter to the state education agency for a further due process hearing with respect to safety concerns as to that particular education plan.  Instead, on remand, the district court should grant declaratory judgment in favor of Lillbask on the jurisdictional issue to ensure that defendants understand that safety concerns may be considered in the development and review of future IEPs for Lindsey.

Lillbask v. State of Connecticut Dep't of Educ., 397 F.3d 77, 94 (2005).

Defendants argue that the Second Circuit's decision did not impose any affirmative requirements upon them with regard to the 1997-98 school year, or in future years.  They argue, rather, that the Second Circuit merely advised them that in future cases raising safety concerns and a request for a due process hearing, a special education due process hearing officer appointed by the State Department of Education would have jurisdiction under the IDEA to consider safety

---

[1]The State Defendants are Theodore S. Sergi, Commissioner, State Department of Education, Connecticut State Board of Education, and Mary Gelfman, Hearing Officer.  The State Defendants are also known collectively as the State Educational Agency.  For purposes of this ruling, the State Defendants may also be referred to as "the State."

[2]The Redding Defendants consist of the Redding Board of Education and Kenneth Freeston, who comprised Lindsey's Local Educational Agency.

issues raised by the parent, as long as the safety issues relate to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child. Defendants argue further that this ruling did not alter their legal relationship with Plaintiff and that, as a result of the permissive language used by the Second Circuit–that "safety concerns may be considered,"–safety issues may, but not must, be considered.

Plaintiff's reference to actions taken subsequent to this Court's previous decision, or before the Second Circuit's decision, are not persuasive in assessing whether the decision materially altered the legal relationship of the parties. The fact remains, however, that the Second Circuit directed this Court to enter a declaratory judgment "to ensure that defendants understand that safety concerns may be considered in the development and review of future IEPs for Lindsey." Although the Second Circuit was aware, that for purposes of the 1997-98 IEP, the issue was moot, it explicitly intended to ensure the appropriate consideration of safety issues in, not only any future case but, more specifically, "future IEPs for Lindsey." Plaintiff asserted a variety of claims against Defendants in this case, and the Court does not consider the issue of jurisdiction to consider safety concerns as having any less significance than Plaintiff's other claims. The legal relationship between the parties has been materially altered because, as a result of the declaratory judgment, hearing officers may, and must if raised and relevant, consider safety concerns. Plaintiff has therefore achieved some of the benefits sought with respect to the jurisdictional claim. Accordingly, the Court concludes that Plaintiff is a prevailing party for purposes of recovering attorney's fees.

**ii.     The Timeliness of Plaintiff's Due Process Hearing Decisions**

Plaintiff also argues that she is a prevailing party as a result of this Court's grant of summary judgment on her claims that while conducting three due process hearings the State violated the IDEA and section 10-76h(b) of the Connecticut General Statutes.   The State counters, as it did on the motion for summary judgment, that the hearings were "marked by dozens of extensions and continuances," the majority of which Plaintiff had requested.  Lillbask v. Sergi, 117 F. Supp. 2d 182, 189 (D. Conn. 2000).  The State also argues that Plaintiff received only technical–but not practical–relief because the Court based its decision on the State's failure to submit a statement of material facts, not on the merits of Plaintiff's claim.  The State argues that Plaintiff is therefore not a prevailing party because the Court did not provide her with any relief on those claims and that no aspect of the relationship between Plaintiff and the State changed as a result of the judgment.

The Court's grant of summary judgment on Plaintiff's timeliness claims was not predicated solely upon the State's failure to submit a statement of material facts.  In fact, this Court previously explained that the State's failure to proffer evidence justifying the hearings' length, coupled with its failure to oppose or contradict Plaintiff's assertions on the timeliness issue, precluded a determination that the time taken was reasonable.  See Lillbask v. Sergi, 193 F. Supp. 2d 503, 511 (D. Conn. 2002).  The Court will not, on this motion for attorney's fees and costs, relitigate the merits of the case.

An examination of Plaintiff's Complaint, on balance, reveals that she lost on far more issues than those on which she "prevailed."  More specifically, this Court granted Defendants' motion for summary judgment with respect to Plaintiff's claims that (1) federal law preempted

7

various procedural issues refined in state law, (2) the hearing officer's decisions violated the

IDEA, related state statutes and regulations, section 504 of the Rehabilitation Act, and the due

process and equal protection clauses of the Fourteenth Amendment and the Connecticut

Constitution, (3) her fundamental rights to due process were violated, (4) the decision in Case

No. 97-231 violated section 504 of the Rehabilitation Act, and the due process and equal

protection clauses of the Fourteenth Amendment and the Connecticut Constitution, and (5) IDEA

preempted Connecticut Public Act 95-237 on the issue of administrative exhaustion.  The Court

concludes, however, that the Court's grant of summary judgment with respect to the timeliness

claims resulted in Plaintiff's "prevailing" for purposes of recovering attorney's fees.  Here, as

with the jurisdictional claim, the Court will not decrease the significance of Plaintiff's claim

regarding the timeliness of due process hearings decisions or conclude that the resolution of

those issues in her favor was merely technical or de minimis.  Furthermore, through its ruling, the

Court has reaffirmed the importance of timely compliance with the statutory deadline regarding

the timely issuance of decisions, thereby providing Plaintiff with some of the benefits sought in

bringing the suit.

**B.**     **Calculation of Fees**

The Court utilizes a lodestar figure when calculating the reasonable fee to be awarded to a

prevailing IDEA plaintiff.  The lodestar figure is determined "by multiplying the number of hours

reasonably expended on the litigation . . . by a reasonable hourly rate."  G.M. by & Through R.F.

v. New Britain Bd. of Educ., 173 F.3d 77, 84 (2d Cir. 1999) (quoting Blanchard v. Bergeron, 489

U.S. 87, 94, 103 L. Ed. 2d 67, 109 S. Ct. 939 (1989)).  Before determining the appropriate

number of hours for which to compensate Plaintiff's counsel, the Court considers the appropriate

hourly fee.   Fee applicants must "produce satisfactory evidence -- in addition to the attorney's own affidavits -- that the requested rates are in line with those prevailing in the community for similar lawyers of reasonably comparable skill, experience, and reputation." Blum v. Stenson, 465 U.S. 886, 895-96 n.11, 79 L. Ed. 2d 891, 104 S. Ct. 1541 (1984).   A "district court has wide discretion in determining the amount of attorneys' fees to award." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992).   "'The most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" Farrar v. Hobby, 506 U.S. at 114(quoting Hensley v. Eckerhart, 461 U.S. 424, 436, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983).

i.      **Hourly Rate**

Plaintiff argues that $275 per hour is a reasonable rate for the work of Attorney Zimberlin[3] in this case.  Attorney Zimberlin, in addition to attaching her own affidavit regarding her education, experience, and the prevailing rate for similar work, attached affidavits from two attorneys in support of this hourly rate calculation.  Attorney Zimberlin's proposed hourly rate, according to Defendants, is not only unreasonable, but has also increased $75 (up from $200) from the time Plaintiff first filed the motion for attorney's fees and costs on March 11, 2003,

---

[3]Attorney Arthur Allen Smith also seeks attorney's fees in connection with his representation of Plaintiff in the exhaustion of her administrative remedies below.  Attorney Smith requests a $200 hourly fee and claims 356.20 hours from time records beginning January 31, 1997.  In addition, he states that he has redacted over 1000 hours.

Attorney Smith's billing record contains line entries with brief descriptions similar to those proffered by Attorney Zimberlin.  Although Attorney Smith seeks reimbursement for services beginning in 1997 and through March 2005, he has failed to establish that his request for fees relates to issues that Plaintiff prevailed upon at trial.  Furthermore, roughly two-thirds of the entries relate solely to telephone conferences with Attorney Zimberlin from June 1998 through March 2005.  Accordingly, the Court concludes that Attorney Smith is not entitled to an award of attorney's fees.

which this Court denied without prejudice.  Defendant also point to the fact that since Plaintiff's
2003 filing, Attorney Zimberlin is seeking compensation for an additional 139.95 hours.

Attorney Zimberlin states in her affidavit that she has twenty-four years of civil litigation
experience and has been practicing special education law since 1994.   She also provided
competent counsel to Plaintiff in this case, which is evidenced by the fact that she prevailed in
advancing at least some of Plaintiff's claims.  Defendants point to cases in which courts have
deemed excessive an hourly award of $275, while Plaintiff has pointed to cases upholding such
awards when experienced counsel provided competent representation.

The Court may consider the extent to which Plaintiff prevailed when considering an
appropriate fee award and, as discussed above, Plaintiff prevailed in this case on far fewer claims
than those on which she was denied relief.  The Court concludes, based not only upon Plaintiff's
experience, but also upon the affidavits of attorneys Ann Blanchard and Lawrence Berliner in
support of Ms. Zimberlin's hourly rate, that an award of $200 is appropriate in this case.

**ii.    Total Number of Hours**

Plaintiff alleges that she has spent 1,737.90 hours working on the case, but has requested
compensation for only 713.95 as specific to those claims on which she prevailed.  Attorney
Zimberlin has proffered affidavits in support of this demand, as well as a detailed billing record
listing the amount of time spent working on the case, including researching issues related to the
case and drafting pleadings and memoranda.  The billing records, which date from 1997 through
2005, consist of fifty-two pages of entries indicating the work performed and the amount of time
billed therefor.

The State argues that the number of hours alleged to have been spent working on those

issues on which she prevailed is both unreasonable and unsubstantiated.  According to the State, using even a generous standard, only 110.35 hours of Attorney Zimberlin's records have a trace connection to the State.  The State argues further that another 80.10 hours are not exclusively related to the State Defendants' issues, if at all.  Finally, the State argues that Plaintiff's counsel should be awarded no more than $2,400.  The State derived this figure by multiplying four hours for each of the three hearings on which this Court concluded the State failed to provide a timely due process hearing decision, by an hourly rate of $200.  The State contends that Plaintiff was responsible for the delay and that, if Plaintiff had sought to enforce the consent decree issued in Barbara R., a short proceeding could have resolved the issue.

As this case began in 1997 and has survived in some form or another until 2006, the Court will not speculate as to how quickly the case may have been resolved had Plaintiff many years ago chosen a different course of action.  Plaintiff's counsel has redacted her billable time for this case to more accurately reflect the time spent working on issues on which she ultimately prevailed.  The State's assertion that no more than 190 hours are remotely related to the issues pursued in their case is unavailing, as in their memorandum they specifically dispute only fifteen hours worth of entries out of the more than seven-hundred requested.  The remainder of the State's response consisted of unsubstantiated strike outs of counsel's entries.  Although the Court agrees with Defendants that some entries are likely not specifically related to counsel's pursuit of the claims against them on which she prevailed, the State has specifically disputed relatively few hours.

The Redding Defendants' arguments are equally unpersuasive.  They claim that Plaintiff has failed to provide a detailed explanation as to how the numerous fee entries relate to the single

11

issue of whether the hearing officer in the second due process hearing had jurisdiction to consider safety issues.  Their claim that counsel's records are vague is bereft of reference to any specific entries.

The Court agrees with Defendants that many of counsel's entries do not delineate the exact claim being pursued.  Notwithstanding the detailed listing proffered, it remains difficult to parse through the brief entries to discern with any reliable accuracy exactly what specific legal claims were being pursued at any particular time.  The majority of the entries list activity that could very well have addressed facts or issues so central to the underlying claims that it is impossible to separate them entirely.

The Redding Defendants suggested that an across-the-board reduction by some percentage is appropriate.  The Court concludes, however, that a lump sum award, while achieving a similar result, is appropriate in this case due to the myriad entries that fail to explicitly provide a connection to those claims on which Plaintiff prevailed.  The Court has already concluded that, although a prevailing party, Plaintiff lost far more claims than those won and, thus, the award should be adjusted accordingly.  In light of this ratio, coupled with the difficulty in discerning the billing entries particularly relevant to the discrete claims on which Plaintiff prevailed, the court concludes that an award compensating counsel for 300 hours of work is appropriate, for a total of $60,000.

### C.     Apportionment of Liability

When determining the appropriate apportionment of liability for purposes of awarding attorney's fees and costs, courts may consider, among other things, the relative culpability of the parties and the proportion of time spent litigating against each defendant.  See Koster v. Perales,

903 F.2d 131 , 139 (2d Cir. 1990). "[T]he district court may allocate the fee award between the responsible parties, setting the percentage for which each is liable where the claims against the defendants are separate and distinct or where culpability is significantly unequal, Crosby v. Bowling, 683 F.2d 1068, 1075 (7th Cir. 1982), or it may hold the responsible parties jointly and severally liable for the fee award." Id.

_____ Plaintiff's appeal to the Second Circuit resulted in her status as a prevailing party with respect to a claim alleged against both the State and Redding Defendants. Furthermore, Plaintiff prevailed on summary judgment against the State Defendants with respect to the timeliness of due process hearings decisions. As discussed above, Defendants have specifically challenged only a limited number of entries in counsel's billing record. Absent particular disputes with respect to individual entries throughout counsel's billing record, the Court finds appropriate an allocation of liability in proportion to the claims on which Plaintiff prevailed against each Defendant. As to the State Defendants, Plaintiff prevailed on both the timeliness claim and the jurisdictional claim. As to the Redding Defendants, however, Plaintiff prevailed only as to the jurisdictional claim. Accordingly, the Court finds the State Defendants liable for two-thirds of the fees and costs awarded. The Redding Defendants shall be responsible for the remaining one-third.

**D.    Costs**

Plaintiff's request for reimbursement of costs for the filing fee and service or process is hereby granted. Plaintiff shall file with the Clerk a verified bill of costs.

**IV.    Conclusion**

For the reasons provided above, Plaintiff's motion for attorney's fees is granted in part.

The State Defendants are responsible for $40,000 of the award, and the Redding Defendants are responsible for $20,000.

SO ORDERED.

Dated at New Haven, Connecticut, March  17 , 2006.

_____/s/_____
Peter C. Dorsey
United States District Judge